**Janelle DISHMAN and William Dishman, Appellant**

v.

**C & R ASPHALT, LLC; Lazarus Real Estate, Inc.; and Macy's Retail Holdings, Inc., Appellees.**

**No. 2012–CA–001139–MR.**

Court of Appeals of Kentucky.

July 18, 2014.

Discretionary Review Denied by Supreme Court June 3, 2015.

J. Hadden Dean, Danville, KY, for Appellants.

David K. Barnes, Christine D. Campbell, Louisville, KY, for Appellees, Macy's Re-

tail Holdings, Inc. and Lazarus Real Estate, Inc.

J. Dale Golden, Lexington, KY, for Appellee, C & R Asphalt, LLC.

Before COMBS, LAMBERT, and THOMPSON, Judges.

## OPINION

LAMBERT, Judge:

In this premises liability case, Janelle Dishman and her husband, William Dishman, have appealed from the Fayette Circuit Court's June 12, 2012, summary judgment in favor of C & R Asphalt, LLC; Macy's Retail Holdings, Inc.; and Lazarus Real Estate, Inc.; dismissing their claims. We affirm the order on appeal.

On June 11, 2011, the Dishmans filed a complaint against C & R Asphalt, LLC ("C & R"); Fayette Mall SPE, LLC; Fayette Plaza CMBS, LLC (collectively, "Fayette Mall"); Lazarus Real Estate, Inc.; and Macy's Retail Holdings, Inc. (collectively, "Macy's"). In their complaint, the Dishmans alleged that on September 8, 2010, the defendants breached their duty to exercise ordinary care to maintain the premises in a reasonably safe condition for its invitees, including Janelle, when Janelle went to the Fayette Mall in Lexington, Kentucky, and tripped and fell over uneven ground in a construction area in the parking lot on her way to the entrance, thereby sustaining injuries. Janelle claimed compensatory damages for past and future pain and suffering, past and future reasonable medical expenses for treating her injuries, and loss of earnings. William claimed compensatory damages for loss of consortium. Macy's, C & R, and Fayette Mall all filed answers defending against the Dishmans' complaint.

Discovery established that Janelle fell in the Macy's parking lot as she was walking toward an entrance to Macy's. She looked both ways before crossing the pavement to avoid any cars, started walking across the parking lot when the traffic had cleared, and fell and broke her hip. She fell in an area of uneven pavement where C & R had been excavating or milling the parking lot area in order to repave it pursuant to a contract it entered into with Macy's. C & R had placed barriers and caution tape in the construction area, but some of the barriers had been removed from the area where Janelle was walking for five minutes in order to allow a construction truck to move.

All of the defendants filed motions for summary judgment. C & R argued that Janelle did not know what caused her fall, that any alleged hazardous condition was clearly marked with barricades and caution tape, that a landowner is not required to protect or warn against open and obvious dangers, and that a jury would be required to speculate as to what caused Janelle's fall, all leading to the conclusion that summary judgment in its favor was appropriate. C & R specifically cited to *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky.2010), to argue that land possessors cannot be held liable to invitees who are injured by open and obvious dangers so long as distraction on the part of the invitee is not anticipated. Here, Janelle testified by deposition that she was not distracted when she started crossing the parking lot area because the traffic had cleared. Macy's, in its motion, argued that the area in the parking lot where Janelle fell was under the sole responsibility and control of C & R, an independent contractor, at the time of the accident and that it (Macy's) was not responsible for the condition of the parking lot area where the repaving was being done. Macy's also argued that the Dishmans had not produced any evidence suggesting that its conduct caused or con-

tributed to Janelle's fall. In addition, Macy's argued that it did not breach its duty to Janelle because it did not have any control over the area; that the condition of the worksite was open and obvious, citing *Lucas v. Gateway Community Services Organization, Inc.*, 343 S.W.3d 341 (Ky.App.2011), and *McIntosh, supra;* and that Janelle could not identify what caused her to fall and could not therefore establish proximate cause.[1]

The Dishmans responded to the motions, arguing that genuine issues of material fact remained to be decided. The Dishmans argued that pursuant to *Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431 (Ky.2003), once they had established that an unsafe condition existed, the burden shifted to the defendants to show the absence of negligence or the exercise of ordinary care, which had not occurred in this case. They disputed the defendants' assertions that the condition was open and obvious, but went on to argue that *McIntosh* precluded the entry of summary judgment. They asserted that a finding that a condition is open and obvious presented a jury question as to whether the land possessor was negligent for failing to fix an unreasonable danger, whether the defendants had used adequate warnings, or whether it was foreseeable that Janelle would fall or might have been foreseeably distracted or overlooked the danger. Related specifically to Macy's, the Dishmans argued that it helped create the conditions leading to Janelle's fall by insisting that the east entrance remain open during the construction and was therefore liable for its own negligence and for the negligence of C & R through *respondeat superior.*

A hearing was held on June 1, 2012, during which the parties discussed their respective motions. The court asked questions regarding the barricading of the area, and counsel for C & R stated that one of the barriers and some tape had been removed at the time of the fall. The court questioned how this situation could not be considered open and obvious and stated that the appropriate steps appeared to have been taken to warn everyone. The parties discussed where the warning was situated and other circumstances of the incident, including Janelle's testimony that she saw none of the construction warning signs, but was only concerned with the traffic. The court questioned how Janelle had missed all of the construction activity and proceeded to cross the lane of the parking lot. In the court's opinion, the fact that Janelle did not look down and or look to her side again as she was walking in the lane of traffic to see the barrier and tape and the activity in the area took this out of the *McIntosh* category. The court stated that the hazard was "incredibly open and obvious" and that everyone took every precaution and assumed the duty to warn. Accordingly, the court granted the motions for summary judgment. On June 11, 2012, the circuit court entered its written order granting the motions and dismissing the Dishmans' claims against Macy's and C & R. This appeal now follows.

On appeal, the Dishmans contend that several general issues of material fact remain in this case, making summary judgment inappropriate; that C & R had a duty to warn Janelle of the trip hazard;

1. Fayette Mall argued that it was entitled to a judgment as a matter of law because it did not owe any duty to the Dishmans. It did not have any ownership interest in and had not assumed responsibility for the parking lot where the fall occurred, and Macy's admitted that it owned and was responsible for the maintenance and ownership of the area of the parking lot where Janelle fell. The circuit court entered an agreed order of dismissal as to the Dishmans' claims against Fayette Mall on June 7, 2012.

that the trip hazard was not open and obvious as a matter of. law; that ample evidence established that both Macy's and C & R were negligent and that their negligence caused Janelle's injuries; and that the circuit court erred in ruling that Macy's and C & R met their burden of proving an absence of negligence. In their respective briefs, Macy's and C & R dispute the Dishmans' arguments.

After this case was assigned to the merits panel, the Supreme Court of Kentucky rendered two opinions addressing premises liability; namely, *Shelton v. Kentucky Easter Seals Society, Inc.,* 413 S.W.3d 901 (Ky.2013), as corrected (Nov. 25, 2013), and *Dick's Sporting Goods, Inc. v. Webb,* 413 S.W.3d 891 (Ky.2013), as corrected (Nov. 25, 2013). Pursuant to this Court's order, the parties filed supplemental briefs addressing the application of both of these new cases, and we have also considered these arguments.

Our standard of review in an appeal from a summary judgment is well-settled in the Commonwealth. "The standard of review on appeal when a trial court grants a motion for summary judgment is 'whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.'" *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001), citing *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996); *Palmer v. International Ass'n of Machinists & Aerospace Workers,* 882 S.W.2d 117, 120 (Ky.1994); Kentucky Rules of Civil Procedure 56.03. "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis,* 56 S.W.3d at 436, citing *Scifres,* 916 S.W.2d at 781; *Estate of Wheeler v. Veal Realtors*

*and Auctioneers, Inc.,* 997 S.W.2d 497, 498 (Ky.App.1999); *Morton v. Bank of the Bluegrass and Trust Co.,* 18 S.W.3d 353, 358 (Ky.App.1999). With this standard in mind, we shall review the judgment on appeal.

In *Shelton* and *Webb,* the Supreme Court of Kentucky extensively addressed the law controlling premises liability in the Commonwealth, clarifying its prior holding in *McIntosh* and specifically discussing situations where a condition is open and obvious or is not open and obvious. *Shelton* presents the analysis where a condition is open and obvious.

> We alter the analysis performed in this and future cases of this sort such that a court no longer makes a no-duty determination but, rather, makes a no-breach determination, dismissing a claim on summary judgment or directed verdict when there is no negligence as a matter of law, the plaintiff having failed to show a breach of the applicable duty of care. This approach places the reasonable-foreseeability analysis where it belongs—in the hands of the fact-finders, the jury. This approach continues Kentucky's, along with a growing number of states', slow, yet steady, progress to modernize our tort law and eliminate unfair obstacles to the presentation of legitimate claims. And this approach brings transparency and consistency to the decision-making and reasoning of Kentucky's judges.

*Shelton,* 413 S.W.3d at 904. The Court defined an "open and obvious" condition as follows:

> An open and obvious condition is one in which the danger is known or obvious. The plaintiff knows of a condition when she is aware, "not only ... of the existence of the condition or activity itself, but also appreciate[s] ... the danger it involves." And the condition is *obvious*

when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."

*Id.* at 906 (footnotes omitted).

In *McIntosh*, the Court softened the effect of the open and obvious doctrine and adopted Restatement (Second) of Torts, § 343A (1965). In doing so, the Court explained, "The lower courts should not merely label a danger as 'obvious' and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable." *McIntosh*, 319 S.W.3d at 392. The *Shelton* Court then clarified the holding in *McIntosh* as follows:

Today's case presents us with an opportunity to clarify *McIntosh* and emphasize that the existence of an open and obvious danger does not pertain to the existence of duty. Instead, Section 343A involves a factual determination relating to causation, fault, or breach but simply does not relate to duty. Certainly, at the very least, a land possessor's general duty of care is not eliminated because of the obviousness of the danger.

*Shelton*, 413 S.W.3d at 907. "Generally speaking, a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Id.* at 909 (footnote omitted). In *Shelton*, the Court shifted "the focus away from duty to the question of whether the defendant has fulfilled the relevant standard of care." *Id.* at 910. Further explaining the application of Section 343A, the Court held: "Section 343A suspends liability when the danger is

known or obvious to the invitee, *unless* the invitor should anticipate or foresee harm resulting from the condition despite its obviousness or despite the invitee's knowledge of the condition." *Id.* at 911 (emphasis in original). Only if a landowner has fulfilled its duty of care will it be shielded from liability for an open and obvious condition: "No liability is imposed when the defendant is deemed to have acted reasonably under the given circumstances." *Id.*

The *Shelton* Court went on to discuss "the extent of foreseeable risk" question, labeling this as a question of fact:

"The extent of foreseeable risk" at the time of the defendant's alleged negligence "depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter." It is important to note that whether a duty of care exists is a wholly different and distinct concept from whether a standard of care, typically that of reasonable or ordinary care, is met or satisfied. One is a purely legal question, grounded in social policy, while the other is inherently fact-intensive, grounded in common sense and conduct acceptable to the particular community. Accordingly, the foreseeability of the risk of harm should be a question normally left to the jury under the breach analysis. In doing so, the foreseeability of harm becomes a factor for the jury to determine what was required by the defendant in fulfilling the applicable standard of care.

*Id.* at 913–14 (footnotes omitted). After noting that a landowner has a duty to an invitee to either eliminate or warn of unreasonable risks of harm, the *Shelton* Court explained:

An unreasonable risk is one that is "recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized" or one that is "in fact recognized as such by the particular defendant." ... But when a condition creates an unreasonable risk, that is when a defendant "should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger[,]" liability may be imposed on the defendant as a breach of the requisite duty to the invitee depending on the circumstances.

*Id.* at 914 (footnotes omitted).

Finally, the *Shelton* Court addressed the effect of its holding on the summary judgment process.

It is important to emphasize that summary judgment remains a viable concept under this approach. The court's basic analysis remains the same because, on a motion for summary judgment, a court must still examine each element of negligence in order to determine the legitimacy of the claim. But the question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one. This correctly "examines the defendant's conduct, not in terms of whether it had a 'duty' to take particular actions, but instead in terms of whether its conduct *breached* its duty to exercise the care" required as a possessor of land. If reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation, summary judgment is still available to a landowner. And when no questions of material fact exist or when only one reasonable conclusion can be reached, the litigation may still be terminated.

*Id.* at 916 (footnotes omitted). The Court remanded the case for a factual determination of whether the property owner breached its duty to Shelton.

Turning to *Webb,* the Court addressed a situation where the condition was not open or obvious and utilized general negligence principles in its analysis.

Generally speaking, a landowner is not exempt from the overarching duty of reasonable care that pervades our negligence law. "The concept of liability for negligence expresses a universal duty owed by all to all." And "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." "A customer of a store, when on that part of the premises where customers are expected to go, is an invitee." More specifically with regard to the invitees, we have routinely held that "landowners owe a duty to invitees to discover unreasonably dangerous conditions on the land and either correct them or warn of them." Of course, possessors are not required to ensure the safety of individuals invited onto their land; but possessors of land are required to maintain the premises in a reasonably safe condition.

As *McIntosh* makes clear, Dick's Sporting Goods, as a possessor of land, has a duty to maintain reasonably safe premises for its patrons. This duty involves the responsibility to "discover unreasonably dangerous conditions on the land and either correct them or warn of them." ... But when the condition is neither *known* nor *obvious* to the invitee, as previously determined, the full weight of the duty to maintain reasonably safe premises remains. Accordingly, with no *known* or *obvious* danger present, a landowner owes a duty of reasonable care to those individuals invited onto the landowner's property, and

the landowner must inform invitees of or eliminate any unreasonable dangers that would otherwise be undetected.

*Webb*, 413 S.W.3d at 897–98 (footnotes omitted). The Court ultimately held that summary judgment was improper and remanded the case for a factual determination of whether Dick's Sporting Goods breached its duty by failing to maintain its premises in a reasonably safe condition. *Id.* at 899.

In the present case, the Dishmans contend that *Shelton* and *Webb* both mandate a reversal of the summary judgment entered in this case. Citing *Webb*, they maintain that the condition (the drop in the pavement) was neither open nor obvious and that the appellees breached their duty to maintain the premises in a reasonably safe condition or to warn of the unreasonably dangerous condition. They point out that the barriers and caution tape were put in place to warn those in the parking lot of the presence of trucks associated with the repaving work, not the hazard Janelle encountered, and there was no one in place to warn Janelle of the drop-off while the barriers were moved for a short time. But even if the condition could be considered open and obvious, the Dishmans maintain that a question of material fact remains as to whether the appellees breached their duty under *Shelton*.

C & R contends that the summary judgment was appropriate under *Shelton,* as the condition was open and obvious and it did not breach its duty to the Dishmans because it took all possible precautions to warn of the work based upon the evidence in the record that it had cordoned off the area where Janelle fell using red lights and yellow caution tape. Furthermore, Janelle did not dispute the presence of the barricades, caution tape, or work trucks or that these would have been sufficient to warn her of the danger and cause her to avoid the area had she noticed them. C & R argued that *Webb* was distinguishable from the present case because the hazard Webb encountered was not open or obvious and no warnings were in place. Macy's continues to argue that it is not liable for the allegedly negligent acts of C & R because C & R was in exclusive possession of the area in the parking lot where Janelle fell. *Shelton* and *Webb,* therefore, would only apply as related to the actions of C & R. In the event those two cases would apply to it, Macy's argued similarly to C & R that summary judgment was still appropriate.

■ We are persuaded by the arguments of C & R and Macy's that the circuit court properly entered a summary judgment in this matter. The court determined that the hazard was "incredibly open and obvious" and that everyone took every precaution and assumed the duty to warn. In other words, there was no breach of duty because C & R met the standard of care by warning Janelle and other invitees of the risk brought on by the repaving work. Even though a part of the barrier had been removed for a truck to pass through at the time of her fall, enough remained for Janelle to be warned of the risk associated with the ongoing road work, whether it be from the trucks used in the process or something else. Had she been paying attention, Janelle would have been able to avoid the drop-off in the pavement that caused her to fall because of the warnings that had been put in place. Even with the more stringent standard imposed in *Shelton,* summary judgment is still viable under certain circumstances: "If reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation, summary judgment is still available to a landowner. And when no questions of material fact exist or when only one reasonable conclu-

sion can be reached, the litigation may still be terminated." *Shelton,* 413 S.W.3d at 916 (footnotes omitted). Here, there is only one reasonable conclusion that can be reached; that C & R did not breach its duty of care.

 Regarding the question of liability to Macy's, we also agree that Macy's cannot be held liable because C & R was acting as an independent contractor and had sole possession of the section of the parking lot where Janelle fell. *See Shedd Brown Mfg. Co. v. Tichenor,* 257 S.W.2d 894, 895–96 (Ky.1953) ("Charging one with the negligent acts of another, under the doctrine of *respondent superior,* is an arbitrary rule based on public policy; and its justification is that the employer should be vigilant in supervising those in his employ to protect the public generally. *See Bowen v. Gradison Construction Company,* 236 Ky. 270, 32 S.W.2d 1014 (1930). It would be an unfair application of the rule if the 'employer' had no way of guarding against liability by having some control over, or right to control, the particular act or instrumentality which causes the inju-

ry."); *Courtney v. Island Creek Coal Co.,* 474 F.2d 468, 469–70 (6th Cir.1973) ("It is settled in Kentucky that one who engages an independent contractor is not legally responsible for the torts or negligence of such a contractor unless the work involves a special danger to others. It must either be a nuisance or be inherently dangerous."). We disagree with the Dishmans' argument that Macy's retained significant control over C & R's conduct and activities. We also find that the Dishmans' argument that Macy's was negligent in deciding to keep the entrance in question open has no merit.

For the foregoing reasons, the summary judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.